## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

Chivonto Ferguson,

                 Plaintiff,

                                  Case No. 1:18-cv-03440

v.

Yevgeny V. Garkusha, et al.,      Michael L. Brown
                                  United States District Judge

                 Defendants.

_____/

## <u>OPINION & ORDER</u>

Defendants Yevgeny V. Garkusha and Quality Logistics, Inc. seek summary judgment on Plaintiff Chivonto Ferguson's claim for punitive damages in this car crash negligence action.  (Dkt. 78.)  The Court grants in part and denies in part that motion.

## I.    Factual Background

This case stems from a June 27, 2016, motor vehicle accident between Plaintiff and Defendant Garkusha while Garkusha was driving for Defendant Quality Logistics.  (Dkts. 78-1 ¶ 1; 80-1 ¶ 1; 80-2 ¶ 1.)  The undisputed evidence shows that, before entering the intersection where the accident occurred, Garkusha took his eyes off the road and turned his

attention either to his GPS device or to one of his mirrors. (Dkts. 78-1 ¶ 2; 80-1 ¶ 2.)[1] When he looked back at the road, he saw the traffic light for the intersection had turned red. (Dkts. 78-1 ¶ 3; 80-1 ¶ 3.) He proceeded into the intersection and collided with Plaintiff's car, the right front of his tractor striking Plaintiff's vehicle on the driver's door. (Dkts. 78-1 ¶ 4; 80-1 ¶ 4.) The responding police officer did not test Garkusha for driving under the influence and no party suggests he was intoxicated. (Dkts. 78-1 ¶ 6; 80-1 ¶ 6.) The officer did, however, cite Garkusha for the accident. (Dkt. 80-2 ¶ 2.) Plaintiff sued Defendant Garkusha and his employer Quality Logistics in Georgia state court, alleging negligence and negligence per se, imputed liability,[2] and punitive damages. (Dkt. 1-1.) Defendants removed the case to this Court. (Dkt. 1.)

The parties agree that, at the time of the crash, Garkusha acted in the course and scope of his employment as a commercial truck driver with

---

[1] The parties dispute, and the record is unclear, whether Garkusha was looking at his GPS or in his mirror. (Dkts. 78-1 ¶ 2; 80-1 ¶ 2.) This distinction is immaterial for the Court's punitive damages inquiry.

[2] Plaintiff stylizes his claim as "imputed liability," which the Court construes as a claim for negligent hiring, supervision, and entrustment. (*See* Dkt. 1-1 at 6, ¶ 33 ("Defendant Quality was negligent in the hiring, supervision, training, and otherwise allowing Defendant Garkusha to operate a tractor-trailer on June 27, 2016.").)

Quality Logistics. (Dkts. 78-1 ¶ 21; 80-1 ¶ 21.) Defendant Garkusha first obtained a commercial driver's license ("CDL") from the state of Oregon in May 2015. (Dkts. 78-1 ¶ 25; 80-2 ¶ 21; 82 ¶ 21.)[3] He transferred his CDL to Washington five months later. (*Id.*) His Washington CDL had an issue date of October 24, 2015 — the day before he applied for employment with Quality Logistics. (Dkts. 78-1 ¶ 11, ¶ 26; 80-1 ¶ 10; 80-2 ¶ 22; 82 ¶ 22.)

As part of the hiring process, Quality Logistics reviewed only his Washington driving record. (Dkts. 78-1 ¶ 13; 80-1 ¶ 13.) Quality Logistics employee Vitaliy Kolesnik obtained Garkusha's driving record from the state of Washington as required by federal statute. (Dkts. 78-1 ¶ 8; 80-1 ¶ 8.)[4] No violations or convictions appeared on the report.

---

[3] In his statement of additional facts, "Plaintiff maintains that Defendant Garkusha fraudulently obtained his Oregon CDL." (Dkt. 80-1 ¶ 25.) But Plaintiff alleges nothing in his complaint accusing Defendant Garkusha of fraud and has provided no evidence of fraud, beyond the conclusory accusation. This speculation, improperly framed as fact, is immaterial to the Court's summary judgment determination on punitive damages.

[4] The Federal Motor Carrier Safety Act governs the qualifications of commercial truck drivers and specifies the investigation employers must conduct upon hiring a new driver and the documents to keep in each employee's driver qualification file. *See* 49 C.F.R. § 391.51. One of these requirements is that the employer obtain the driver's driving records for the past three years from each state where he held or holds a license. 49

(Dkts. 78-1 ¶ 9; 80-1 ¶ 9.)  Plaintiff does not dispute Quality Logistics' assertion that it reviewed Garkusha's Washington driving record.  But, at the same time, he alleges the Washington report was incomplete and omitted serious violations.  (Dkt. 80-1 ¶¶ 8–9.)  As discussed below, the evidence suggests Quality Logistics reviewed only his commercial driving record in Washington, which only went back two days.  It did not review his complete Washington record or his Oregon record.

Quality Logistics hired Garkusha in early November 2015.  (Dkts. 78-1 ¶ 7; 80-1 ¶ 7.)  Vitaliy Kolesnik rode with and supervised Garkusha for three weeks afterwards, driving with Garkusha from Washington to Florida before allowing Garkusha to drive by himself.  (Dkt. 78-1 ¶ 22.)[5] During the trip, Kolesnik found Garkusha to be a safe driver and never saw him violate any Federal Motor Carrier Safety regulation or state law. (*Id*. ¶ 23.)  While working for Quality Logistics before the collision with

---

C.F.R. § 391.23(a).  The parties agree Defendant Quality Logistics needed to check his Oregon driving record but failed to do so.

[5] Plaintiff disputes the precise timeframe of this training and argues that no proof shows that it occurred in the training records.  He cites nothing in the record to refute directly this fact or contradict it.  *See* LR 56.1(B)(2), NDGa.

Plaintiff, however, Garkusha received a warning in Illinois for following too closely. (Dkts. 78-1 ¶ 16; 80-2 ¶ 23.)

During discovery, the parties learned that Garkusha had several driving infractions in the three years before his employment with Quality Logistics. In December 2012, Garkusha was involved in a collision in which he injured two pedestrians in a crosswalk in Vancouver, Washington when he failed to yield. (Dkts. 78-1 ¶ 15; 80-2 ¶ 15.) In March 2013, he was ticketed in Oregon for driving 81 miles per hour in a 55-mph zone. (Dkts. 78-1 ¶ 14; 80-2 ¶¶ 17–18; 80-5 at 13.) About a month later, police cited him in Washington for driving 83 miles per hour in a 60-mph zone. (Dkts. 80-5 at 13; 80-9 at 2.)

Garkusha had even more problems before that. Police arrested him three times for driving under the influence of alcohol, once in October 2006 and twice in March 2009. (Dkts. 78-1 ¶¶ 17–19, ¶ 24; 80-2 ¶¶ 6–7.) The charges were dismissed upon completion of a deferred prosecution agreement. (Dkt. 78-1 ¶ 20.) His driving privileges, however, were suspended for various amounts of time because of the DUIs, along with the imposition of a mandatory ignition interlock device on his personal vehicle imposed by both Oregon and Washington. (Dkt. 80-2 ¶¶ 9–12.)

At the close of discovery, Defendants moved for partial summary judgment on Plaintiff's claim for punitive damages.  (Dkt. 78.)

## II.   Legal Standard

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

A factual dispute is genuine if the evidence would allow a reasonable jury to find for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it is "a legal element of the claim under the applicable substantive law which might affect the outcome of the case."  *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

The party moving for summary judgment bears the initial burden of showing a court, by reference to materials in the record, that there is no genuine dispute as to any material fact that a jury should decide at trial.  *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  A moving party meets this burden merely by " 'showing'—that is, pointing out to

the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. The movant, however, need not negate the other party's claim. *Id.* at 323. In determining whether the moving party has met this burden, a court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. *Johnson v. Clifton*, 74 F.3d 1087, 1090 (11th Cir. 1996).

Once the movant has adequately supported its motion, the nonmoving party then has the burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Ultimately, there is no "genuine [dispute] for trial" when the record as a whole could not lead a rational trier of fact to find for the nonmoving party. *Id.* But "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48. The court, however, resolves all reasonable doubts in favor of the non-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

## III.  Discussion

The parties agree Defendant Garkusha had multiple, serious infractions on his driving record before the 2016 accident.  Or as Defendant Quality Logistics puts it: "[a]t one time, Garkusha's driving history was not the most exemplary." (Dkt. 78-2 at 11.)  Defendant Quality Logistics nevertheless says it is entitled to summary judgment on Plaintiff's claim for punitive damages because Plaintiff failed to present a genuine issue of material fact suggesting it was more than negligent or grossly negligent in hiring and supervising Garkusha. Similarly, Defendant Garkusha says he is entitled to summary judgment because Plaintiff has presented no evidence suggesting his conduct met the requisite culpability for punitive damages.  (Dkt. 78-2 at 3.)  Plaintiff counters that Quality Logistics' "intentional violations" of its own internal policies and federal regulations "regarding driver qualification, hiring, entrustment, and supervision, at a minimum, creates a jury question on the issue of punitive damages." (Dkt. 80 at 1–2.)  The Court agrees with Plaintiff in part: a jury question exists here as to punitive damages against Quality Logistics but not as to those damages against Garkusha.

## A.   Punitive Damages

Punitive damages are exemplary damages, not intended to compensate a plaintiff but awarded "solely to punish, penalize, or deter a defendant." *Lyman v. Cellchem Int'l, Inc.*, 795 S.E.2d 255, 256 (Ga. 2017).  Thus, Georgia law provides:

> Punitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.

Ga. Code Ann. § 51–12–5.1(b).  To satisfy this high standard, a plaintiff must establish "[s]omething more than the mere commission of a tort." *Lindsey v. Clinch Cty. Glass, Inc.*, 718 S.E.2d 806, 807 (Ga. Ct. App. 2011) (citation omitted).   A plaintiff must establish "circumstances of aggravation or outrage, such as spite or malice, or a fraudulent or evil motive on the part of the defendant, or such a conscious and deliberate disregard of the interests of others that the conduct may be called willful or wanton."  *Haughton v. Canning*, 650 S.E.2d 718, 723 (Ga. Ct. App. 2007).  It follows that "negligence, even gross negligence, is inadequate to support a punitive damages award."  *Lindsey*, 718 S.E.2d at 807 (internal citation omitted).

9

Punitive damages are not recoverable in automobile collision cases "when a driver simply violates a rule of the road." *Id.; see also Huezo v. Halilovic*, No. 13-cv-2580-SCJ, 2015 WL 13776584, *3 (N.D. Ga. Apr. 7, 2015). Punitive damages are only recoverable "where the collision resulted from a pattern or policy of dangerous driving." *Lindsey*, 718 S.E.2d at 807. "Examples of such a 'pattern' or 'policy' include a driving history of several DUIs, excessive speed and striking vehicle twice, driving 20 miles with serious mechanical difficulties, and a DUI in conjunction with numerous traffic safety violations." *Huezo*, 2015 WL 13776584, *3 (collecting cases). The alleged willful misconduct or aggravating circumstances must also relate to the tort alleged. *Carter v. Spells*, 494 S.E.2d 279, 281 (Ga. Ct. App. 1997). "Whether the tort was sufficiently aggravating to authorize punitive damages is generally a jury question." *Tookes v. Murray*, 678 S.E.2d 209, 213 (Ga. Ct. App. 2009). But, when a plaintiff fails to establish a question of fact that a defendant's conduct was either willful or consciously indifferent to the consequences, a court may grant summary judgment. *Taylor v. Powertel, Inc.*, 551 S.E.2d 765, 769 (Ga. Ct. App. 2001).

### 1.    Claims Against Defendant Quality Logistics, Inc.

Defendant Quality Logistics moved for summary judgment on Plaintiff's claim for punitive damages based on its alleged negligent hiring, supervision, or entrustment, arguing its conduct (even if negligent or grossly negligent) was not so outrageous as to permit punitive damages.  At summary judgment, the question is whether Plaintiff has presented evidence from which a jury could conclude Quality Logistics "acted with such an entire want of care as to raise a presumption of conscious indifference to the consequences." *W. Indus., Inc. v. Poole*, 634 S.E.2d 118, 121 (Ga. Ct. App. 2006).  In other words, Plaintiff must produce evidence "from which a jury could infer that [Quality Logistics'] actions showed a conscious indifference to the consequences as alleged in the complaint." *MasTec N. Am., Inc. v. Wilson*, 755 S.E.2d 257, 259 (Ga. Ct. App. 2014).  Plaintiff may do this "by showing that an employer had actual knowledge of numerous and serious violations on its driver's record, or, at the very least, when the employer has flouted a legal duty to check a record showing violations." *Id.*

Plaintiff has presented no evidence to support the actual knowledge prong of this inquiry.  Nothing suggests Defendant Quality Logistics had

actual knowledge of Garkusha's driving infractions.   It pulled his Washington driving record in late October 2015 before hiring him, and it showed "no violations, convictions, or accidents currently on file for this record."  (Dkt. 78-5 at 10.)

But the "flouting a legal duty" prong is a much closer call.  And, after careful consideration, the Court finds it a call for the jury.  The Georgia Court of Appeals' decision in *Smith v. Tommy Roberts Trucking Co.,* 435 S.E.2d 54 (Ga. Ct. App. 1993), supports this conclusion.  In that case, the court explained that Georgia law does not impose a duty on an automobile owner to investigate the competency of someone to whom he or she entrust an automobile.  *Id.* at 57.  But, "the situation is different where the driver is in fact incompetent and the owner is in law bound to check the driver's qualifications."  *Id. (quoting Jones v. Dixie Drive It Yourself Sys.,* 104 S.E.2d 497, 501 (Ga. Ct. App. 1958)).  The Georgia court also explained, "[w]here the owner has a statutory duty to check on the driver's qualifications, the defendant would be precluded from the defense that it did not have actual knowledge of such incompetence on the part of the driver."  *Id.* (internal quotation marks omitted).  The evidence before the *Smith* court showed that the employer knew its

12

driver had received tickets for two traffic violations while driving a company vehicle. *Id.* The plaintiff also presented evidence that the employer had a legal duty to make certain inquiries into the driver's qualifications but failed to do so. *Id.* The undisputed facts showed that, had the employer checked the driving record, it would have seen that the driver had several other traffic violations on his record, including a DUI. *Id.* The court thus concluded it was "for the jury to decide whether those facts show the driver's incompetency, the employer's knowledge of the incompetency, and that the employer's negligence, if any, concurred with that of the driver to cause the plaintiff's injuries." *Id.*

The same is true here. Defendant Quality Logistics makes much of the fact that it pulled Garkusha's Washington driving record and it showed nothing. That is of little surprise considering he only obtained that license two days before Quality Logistics pulled the record. (Dkt. 78-5 at 10.) It also appears Quality Logistics only reviewed an abstract of his commercial driver's record, rather than his complete Washington record. (*Id.*) The federal statute, however, required it to review his motor vehicle record for any state in which he had a license in the prior three years. *See* 49 C.F.R. § 391.23 (directing employer to obtain applicant's

driving record from any state where he held or holds a license from the past three years).  Defendant Quality Logistics concedes it should have obtained Garkusha's Oregon driving record for the past three years.  (*See* Dkt. 78-2 at 16 ("Even if Kolesnik had obtained Garkusha's Oregon MVR for three years, as required by 49 C.F.R. § 391.23, the most it would have shown may have been a speeding violation in 2013.").)[6]  Had it done what federal law required it to do, Quality Logistics would have reviewed Garkusha's complete driving record for both states and learned a whole lot more.  It would have learned of his prior citations in both states for speeding.  And not small speeding infractions.  In March 2013, police cited him in Oregon for going 81 miles per hour in a 55-mph zone, and then two months later (in May 2013), police cited him in Washington for

---

[6] The Court recognizes that Garkusha listed only a Washington license on his application for employment. (Dkt. 78-5 at 18.) Obviously, that was a lie. But the medical examiner's certificate he submitted showed he had an Oregon license. (Dkt. 78-5 at 12.) He also disclosed having worked as a commercial truck driver for another company from May 2015 through October 2015. (*Id.* at 1.) Indeed, he claimed to have logged more than 16,000 miles as a commercial truck driver — an impossible feat for someone who claimed to have obtained his license just two days before. (*Id.* at 18.) All of this should have clued Quality Logistics into the possibility of some level of inconsistencies or omissions in Garkusha's employment application as well as the need to review his Oregon driving record. Perhaps that is why Quality Logistics admits it should have reviewed that record.

driving 83 miles per hour in a 60-mph zone.  (Dkts. 80-5 at 13; 80-9 at

2.)[7]  Quality Logistics would have also learned that, when ticketed in

Oregon, police also cited him for driving with a suspended license.  (Dkt.

78-6.)  This might have caused Quality Logistics to inquire as to why his

license had been suspended and learn of his prior DUIs and refusal to

take a breath test.  (Dkts. 78-1 ¶ 18; 78-11; 80-2 ¶¶ 8–9, 13.)  It would

also have certainly caused Quality Logistics to know that Garkusha lied

---

[7] The abstract of Garkusha's Washington driving record that Plaintiff presented in opposition to summary judgment lists his prior DUIs but does not include the May 2013 speeding ticket.  (Dkt. 80-5.)  The exhibit Plaintiff presented, however, included a Notices of Suspension that he received from the Sate of Washington in June 2013 and February 2014 showing that he received the speeding citation.  (Dkt. 80-5 at 12.) Plaintiff also included a copy of the ticket showing Garkusha's excessive speed.  (Dkt. 80-9 at 3.)  It appears these were, in fact, part of his Washington driving record and would have been available to Defendant Quality Logistics if it had pulled the complete record.  Plaintiff, however, has done an extremely poor job of explaining the documentation available to Defendant Quality Logistics at the time.  Other than alleging the record Quality Logistics pulled was incomplete, Plaintiff merely summarizes Garkusha's troubled driving history.  (Dkts. 80-1 ¶ 14; 80-2 ¶¶ 4-18.)  He makes little attempt to explain the holes in the driving record that it submitted, (Dkt. 80-5), or to show exactly what that record included.  (Defendant does no better in explaining the details.)  At this point, Plaintiff is entitled to the benefits of all reasonable inferences from the record — including the inference that the speeding infraction would have been known to Quality Logistics if it had pulled his complete Washington driving record.   But, Plaintiff's lack of precision and carelessness may present problems in ultimately reaching the jury on punitive damages.  Perhaps Plaintiff will be more attentive at trial.

in his application for employment.  Specifically, the record would have alerted it to his failure to disclose the three traffic convictions in his application and his untruthfulness in stating he had never had a license suspended or revoked.  (Dkt. 78-5 at 18.)

The complete Washington driving record would also have disclosed that, between June 2010 and February 2015, he was required to have an Ignition Interlock Device on his vehicle as a result of his prior DUI arrests.  (Dkt. 80-5 at 4.)  A review of the complete Washington driving record would also have certainly caused Quality Logistics to learn of his three DUI arrests (one in October 2006 and two in March 2009).  (*Id.* at 3–4.)  While those convictions were more than three years old, they would have explained the basis for the interlock device that was required and then removed during the three years prior to his employment.

Defendant Quality Logistics argues that none of these facts matters because no evidence shows that the accident here arose from Garkusha's excessive speed, violation of a crosswalk signal, or intoxication.  Georgia law does not require such an identicalness of circumstances.  Garkusha's prior driving infractions (most notably the speeding and failure to yield) show his recklessness and carelessness behind the wheel of a car.  They

16

may have manifested in specific citations but they show the failure to exercise appropriate care while driving. They show a history of many serious violations that — when considered with his lies — could, and likely should, have put Quality Logistics on notice that he was incompetent to drive its trucks. From the evidence presented, a jury could conclude Defendant Quality Logistics flouted its legal duty to conduct due diligence into Garkusha's driving background before hiring him and thus acted with such conscious indifference to the consequences of his actions.

Compare this case to *MasTec North America, Inc. v. Wilson*, 755 S.E.2d 257 (Ga. Ct. App. 2014). In that case, the Georgia Court of Appeals reversed an award of punitive damages against an employer for the acts of its employee in causing a motor vehicle accident. 755 S.E.2d at 258. The court did so because the undisputed evidence showed the employer checked the driver's complete driving record and the driver had never been involved in an accident, had no traffic citations in the three years before his hiring, and had never had his license suspended or revoked. *Id.* at 260. The facts here fail each item relied on by the court in *MasTec*. Quality Logistics did not review Garkusha's complete driving

record and Garkusha had numerous and serious violations during the preceding three years, had been in an accident before, and had his license suspended.   Following *MasTec* and *Smith*, this Court denies Defendant Quality Logistics' motion for summary judgment on Plaintiff's claim for punitive damages.[8]

### 2. Punitive Damages Claim Against Defendant Yevgeny Garkusha

Besides the claim against Quality Logistics for punitive damages, Plaintiff also appears to seek punitive damages from Defendant Garkusha in connection with the underlying negligence claim.  (Dkt. 1-1 at 8, ¶¶ 46–48.)

But Plaintiff never responds to Defendants' arguments regarding his punitive damages claim against Defendant Garkusha.  Instead, he "speculatively asserts that Garkusha engaged in fraudulent behavior to

---

[8] Plaintiff also argues about Garkusha's eligibility for a commercial driver's license.  The parties spar over the effect of Defendant Garkusha's prior DUIs on the renewal of a CDL versus the initial application for a CDL.  (*See* Dkts. 80 at 15–18; 83 at 13–14.)  None of that matters.  Oregon issued Defendant Garkusha a CDL in May 2015 and Washington issued him on in October of that year.  Whether he should have ever received that certification in the first place or instead been banned for life does not affect whether Plaintiff is eligible for punitive damages for *this collision*.

obtain his CDL." (Dkt. 83 at 13.)  The record contains nothing to support this speculation, however.

Instead, Plaintiff's response brief focuses solely on the punitive damages claims brought against Quality Logistics (i.e., the underlying negligent hiring and entrustment claim and the punitive damages claim). Under the Local Rules, the Court could consider Defendants' argument unopposed.  LR 7.1(B), NDGa.  But even if Plaintiff had responded, the Court finds the record devoid of evidence that Garkusha acted with such a willful and wanton lack of care *during this collision* that would make this the appropriate case for punitive damages.  *Brooks v. Gray*, 585 S.E.2d 188, 189 (Ga. Ct. App. 2003).

At worst, Garkusha blew through a red light and improperly entered the intersection.  While this may have been negligent, even grossly negligent, it does not rise to the level of culpability necessary to impose punitive damages.  This is because "[t]he only evidence relevant to an award of punitive damages . . . relates to the proximate cause of the collision." *See id*. at 190.  And no one contends Garkusha deliberately or wantonly ran the light and rammed his vehicle into Plaintiff's car.  There is also no evidence in the record that Defendant Garkusha's prior driving

infractions related to similar occurrences so that "*the accident result[ed] from* a pattern or policy of dangerous driving." *See MasTec N. Am., Inc.*, 755 S.E.2d at 260; *see also Lindsey*, 718 S.E.2d at 806 (disallowing punitive damages because no evidence driver, who was using his cell phone at the time of the crash, had a history of distraction-related accidents or other evidence to show a pattern of dangerous driving or other aggravating circumstances); *Brooks*, 585 S.E.2d at 190 (holding that crossing the centerline and operating a vehicle without a proper license did not warrant imposition of punitive damages); *Miller v. Crumbley*, 548 S.E.2d 657, 659 (Ga. Ct. App. 2001) (finding no evidence of pattern or policy of dangerous driving where driver failed to keep a proper lookout and pled guilty to following too closely).

And Garkusha was not convicted of any driving violations while operating a commercial motor vehicle for Quality Logistics before the 2016 crash.  Plaintiff has thus failed to put forth clear and convincing evidence that — right before and during this accident — Garkusha exhibited a related pattern of dangerous driving or showed a conscious indifference to consequences.  *See Carter*, 494 S.E.2d at 281 (affirming summary judgment as to punitive damages for defendant driver, where

defendant had history of reckless and violent behavior, was later ticketed twice for speeding and no proof of insurance, but those violations did not relate to or cause the collision at issue).  As a result, the Court dismisses Plaintiff's punitive damages claim against Defendant Garkusha.

The Court finds Plaintiff has failed to produce sufficient evidence to create an issue of fact with respect to Defendant Garkusha's punitive damages liability.  But the record does contain sufficient evidence to allow a reasonable juror to conclude that Defendant Quality Logistics could be liable for punitive damages.  Summary judgment on that claim is thus inappropriate.[9]  Because of this, the Court likewise denies Defendants' motion for summary judgment as to Plaintiff's negligent hiring, entrustment, and supervision claim against Quality Logistics.

---

[9] Quality Logistics has conceded *respondeat superior* liability, which would typically entitle it to summary judgment on a negligent entrustment, hiring, and retention claim under Georgia law.  Yet because the Court allows the punitive damages claim to proceed against Quality Logistics, the Court cannot grant Defendants' motion for summary judgment on that claim.  The Court thus denies summary judgment on the imputed liability claim and allows it to proceed.  *See MasTec N. Am., Inc.*, 755 S.E.2d at 261 (dismissing claim against employer for negligent entrustment as duplicative when plaintiff's punitive damages claim also failed).

## IV.  Conclusion

The Court **GRANTS IN PART** and **DENIES IN PART** Defendants Yevgeny V. Garkusha and Quality Logistics, Inc.'s Motion for Partial Summary Judgment (Dkt. 78).  The Court **GRANTS** the motion as to Plaintiff's claim for punitive damages against Defendant Garkusha but **DENIES** the motion as to Plaintiff's claim for punitive damages against Defendant Quality Logistics.  The Court also **DENIES** the motion as to Plaintiff's claim for imputed liability against Quality Logistics.

**SO ORDERED** this 14th day of August, 2020.


_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE